IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil Action No. _____

INSTITUTO MEXICANO DEL SEGURO
SOCIAL,

            *Plaintiff*,

v.

TEVA PHARMACEUTICAL INDUSTRIES
LTD.,

            *Defendant*.

IMSS' ORIGINAL COMPLAINT

The Instituto Mexicano del Seguro Social ("IMSS") complains of Teva Pharmaceutical Industries Ltd. ("Teva") as follows:

NATURE OF THE CASE

1. For years, Teva used bribery as an integral part of its world-wide marketing strategy.

2. Teva's illegal conduct is well established. On December 22, 2016, Teva resolved parallel criminal and civil actions by the Department of Justice and the Securities and Exchange Commission. As part of the resolutions of those proceedings, Teva confessed to organized bribery in Russia, the Ukraine, and Mexico. Per the two agreements, Teva paid a fine of $283 million and disgorged $236 million in illicit profits garnered by its illegal conduct, for a total of $519 million.

IMSS' ORIGINAL COMPLAINT—page 1

3. Teva's bribery was not limited to foreign nations. In 2014, Teva agreed to pay $27.6 to the US federal government and to the state of Illinois to resolve claims that Teva paid illegal kickbacks to doctors in the United States to increase sales. Then, earlier this year, Teva agreed to pay another $54 million to the US government to resolve similar claims.

4. In Mexico, Teva paid bribes to IMSS doctors practicing in IMSS hospitals. In 2011 and 2012, alone, Teva admits to garnering about $18,556,000 (including interest) in illicit profits from its Mexico bribery scheme. Teva's bribery, however, began in 2005, and Teva indirectly made far more in illicit profits than the $18.6 million Teva concedes. In fact, if IMSS had known of the illegal bribery, it could not have made any purchases from Teva from 2005 through the present.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(4) because this action is between a foreign state pursuant to the Foreign Sovereign Immunities Act (the FSIA) and a citizen of the United States and the amount in controversy exceeds $75,000 exclusive of costs and fees.

6. This Court has venue pursuant to 28 U.S.C. § 1391(2) because a substantial part of the events and omissions giving rise to the claims presented herein occurred in this District.

## PARTIES

7. IMSS is the Mexican Social Security Institute, a decentralized agency of the United Mexican States. IMSS is therefore a "foreign state" pursuant to the FSIA, and its officials are covered by the Foreign Corrupt Practices Act.

8. Teva is headquartered in Petah Tikva, Israel. At all relevant times, Teva controlled its Latin American operations, including its operations in Mexico, from its offices in Miami and receives or produces substantial income through its operations in this district, and operates an office in this district.

9. Teva can be served by service on an officer at Teva's United States headquarters, Parsippany-Troy Hills New Jersey or Miami Florida. Teva Pharmaceuticals USA is the North American arm of Teva Pharmaceuticals Industries Ltd., a global pharmaceutical company headquartered in Israel. The company has a global product portfolio of more than 1,800 molecules and a direct presence in 60 countries, including 30 locations across the U.S. and its territories.

FACTUAL BACKGROUND

*The Parties' Business Relationship*

10. IMSS is the main social-service agency of the Mexican government. IMSS was created in 1943 by order of the Mexican President, who continues to nominate IMSS' General Director.

11. IMSS provides health care services to tens of millions of Mexican citizens at hospitals that IMSS owns and operates throughout Mexico. The Mexican government funds IMSS with tax revenues and compulsory contributions. IMSS also manages the purchases of medical supplies for other Mexican governmental agencies, including the Instituto de Seguridad y Servicios Sociales de los Trabajadores del Estado (ISSSTE), Petroleos Mexicanos (Pemex), and the Mexican military.

12. IMSS is the appropriate agency to bring the claims presented herein.

13. Teva is a multinational pharmaceutical corporation that specializes in generic drugs that Teva distributes worldwide.

14. Teva's distribution in Mexico is orchestrated out of Teva's Miami office. Teva utilized a number of wholly-owned subsidiaries to sell its products in Mexico, including Sicor de Mexico, S.A., Lemery S.A. de C.V., Lemery Desarrollo y Control S.A. de C.V., Immobiliaria Lemery S.A. de C.V., Vitrium Division Farmaceutica, S.A. de C.V., Teva Pharmaceutical Mexico S.A. de C.V., and Ivax Pharmaceuticals Mexico, S.A. de C.V. (together, "Teva Mexico"). Teva Mexico's financial statements are consolidated into the financial statements of Teva at the parent level. Teva controls Teva Mexico from its offices in Miami.

*Teva's International Bribery Scheme*

15. For years, Teva used bribes to sell its products to governmental agents throughout the world, including within the United States and within Mexico.

16. Teva's international bribery strategy has been established in various actions brought by the Department of Justice and the Securities and Exchange Commission.

17. Teva cannot deny its responsibility under United States law for its international conduct. Per Teva's deferred prosecution agreement with the DOJ, Teva stated that it, "admits, accepts, and acknowledges that it is responsible under United States law for the acts of its former officers, directors, employees, and agents as charged" in the government's criminal information and as set forth in an attached Statement of Facts. In the same agreement, Teva agreed that it would not "make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility" for its international bribery scheme.

18. Teva also consented to entry of a final judgment in the related SEC action and is therefore bound by the factual statements in the SEC's action, including that Teva paid bribes to Mexican government officials and obtained millions in illicit profits as a result.

*Teva's Conduct in Mexico*

19. Teva concedes that, in 2011 and 2012, alone, Teva garnered approximately $18,556,000 in illicit profits from illegal payments Teva and its agents made to IMSS doctors and officials. Teva's actual illicit profits were much greater.

20. In fact, Teva's Mexican agents had begun to bribe Mexican government officials since at least 2005.

21. Teva's Latin American Division, headquartered in Miami, became aware no later than 2007 that its Mexican agents were illegally bribing Mexican government officials. For example, in 2007, Teva in Miami learned that one of Teva Mexico's managers routinely entertained Mexican government officials at a Cancun hotel to increase sales of Teva drugs in Mexico.

22. In addition, in February 2007, a Teva internal auditor received an anonymous letter stating that Teva Mexico was making illicit payments to government officials to increase sales. In response, Teva initiated an internal investigation, which was completed in 2008. Teva's investigation uncovered credible evidence of illegal payments by Teva Mexico to government officials in Mexico to influence regulatory and formulary approvals, drug purchase decisions, and prescription decisions.

23. Following completion of its internal corruption investigation, Teva terminated eleven employees of Teva Mexico, but Teva never stopped the illegal conduct or enforced Teva's anti-bribery policy within Mexico.

24. More importantly, Teva never informed IMSS of the bribes it had paid and did not correct its prior false representations to IMSS that Teva was complying with Mexican law.

25. As a result, Teva's misconduct in Mexico continued, and IMSS officials continued to receive bribes from Teva Mexico for prescribing Teva drugs. For example, on November 6, 2008, a Mexican government official emailed a Teva employee responsible for Mexico to complain about Teva Mexico's failure to make certain promised payments. The Mexican government official wrote Teva, "Teva Mexico was promises promises & promises and there was never any interest in order to improve our relationship." [sic] The Mexican Official also told Teva that he thought the failure to make the promised (and illegal) payments was "really strange when I'm your best client in Mexico." The official noted that he was prescribing Teva's Copaxone (one of Teva's few non-generic drugs) to approximately 170 patients, making the official one of the largest prescribers in the region. The email was forwarded to a Teva executive on November 12, 2008.

26. Instead of stopping the illegal conduct, the Teva executive chose instead to ensure the government official got his bribes. The Teva executive instructed a senior Teva Mexico executive to keep the Mexican government official happy: "I'd appreciate having your good inputs and trust that [Mexican Official's] problem can be resolved. After all, [it's] not every day we get a complaint from a professor that has 170 Copaxone patients."

27. The senior Teva Mexico executive responded to the Teva Executive in December and explained that the level of Copaxone sales in Mexico, "until very recently, was not due to scientific/academic support *but mostly to other incentives*." (emphasis added)

28. Teva went so far as to instruct its managers not to enforce Teva's purported anti-corruption policies in Mexico. In January 2011, at a meeting of Teva's compliance team, Teva's

Regional Compliance Officer responsible for Mexico opined that "Compliance['s] role will be [to] not interfere with the ultimate decision made by Business Heads."

29. During this same time period, Teva's Regional Compliance Officer "emphasized that the compliance program, current local policy and Sales and Marketing guidelines were not relevant for the [Latin American] region and were to be ignored."

30. In April 2011, a Teva employee responsible for implementing Teva's purported anti-corruption program emailed a senior executive responsible for overseeing compliance in Latin America, explaining that Teva Mexico was "specifically instructed not to implement a robust system that will enable us to monitor and assure that the same doctor wasn't invited to a meal more than three times (for example)" and that "the purpose of the global FCPA tool under development is mainly to automate the manual forms; get a more organized and easy process of authorizations with less paper work."

31. In November 2011, a Teva employee with responsibility for Teva Mexico wrote a memo concluding: "We cannot guarantee that we are not (1) executing payments that would violate FCPA anti-bribery provisions and (2) properly accounting for any such payments under the books and records provisions of the FCPA."

32. Accordingly, with the agreement of Teva in Miami, Teva Mexico continued to pay IMSS doctors to prescribe Teva products, including Copaxone. The IMSS doctors being bribed worked at IMMS-owned and thus state-controlled hospitals, working under the direction and control of the Mexican government.

33. Most of the doctors who were paid bribes 2011 and 2012 had received illegal payments since at least 2007.

34. In particular, Teva Mexico through its distributor paid Mexican officials between $9,600 and $30,000 each per year to influence their Copaxone prescription decisions.

35. Teva Mexico mischaracterized its payments to Mexican officials as legitimate business expenses in its books and records, which were consolidated into Teva's financial statements filed with the SEC.

36. Teva knew and approved of the illegal activities of its wholly-owned subsidiaries and its agents throughout the world and specifically within Mexico.

37. In the alternative, Teva acted with willful ignorance of the bribery scheme organized by its wholly-owned subsidiaries that benefited Teva.

38. To control the international scheme, Teva personnel communicated with Teva personnel around the world, including within Mexico. Teva personnel would also travel to and from Mexico in support of the scheme.

*Effect on IMSS*

39. According to Mexican government procurement laws, to obtain IMSS contracts, Teva had to represent that it was complying with all legal requirements for the sale of medicine to IMSS and within Mexico.

40. Teva made the required representations, but its statements were false.

41. IMSS relied on Teva's false, material statements and omissions to consummate business transactions with Teva. IMSS' reliance lasted longer than the bribes themselves. With each additional contract, Teva had to represent that it had and would comply with Mexican law. Following the first bribes, those representations were false. Absent the false representations, IMSS would have been legally barred from contracting with Teva. Therefore, IMSS relied on Teva's

representations when approving contracts for the purchase of Teva products well after the expressly illicit conduct set out above.

42. Teva concedes that in two years it made at least $18,556,000 in illicit profits from its Mexican bribery scheme. Teva's actual gains from its illegal bribery is far greater since Teva's scheme began in 2005 and extended at least through December 2016, when Teva finally publicly disclosed its bribery scheme.

43. Teva's fraud and breaches of Mexican procurement laws voids Teva's contracts with IMSS from 2005 through at least December 2016, and therefore, Teva should be required to return all proceeds received from IMSS, retaining at most the actual production cost of the medicine it sold.

## CLAIMS FOR RELIEF

44. Based on the foregoing facts, IMSS raises the following claims for relief:

*First Claim for Relief – Fraud*

45. Teva's false, material statements and omissions to IMSS were fraudulent.

46. IMSS relied on Teva's false, material statements and omissions in order to consummate business transactions with Teva. Absent the false claims, IMSS would have been barred from contracting with Teva.

47. IMSS is entitled to avoid the contracts fraudulently obtained and to a return of the compensation it paid to Teva. IMSS' remedies are the same under either United States or Mexican law.

*Second Claim for Relief –Inducement of, and Participation in, Breach of Fiduciary Duties*

48. Teva conspired with, and induced, IMSS officials to breach their fiduciary duties to IMSS. Teva unduly benefited from those breaches of duties.

49. IMSS is entitled to the avoidance of all contracts approved by a compromised IMSS official and a return of all consideration paid to Teva apart from any proven *quantum meruit* benefits to IMSS. IMSS' remedies are the same under either United States or Mexican law.

*Third Claim for Relief – Violation of Articles 50 and 60 of the Law of Acquisitions, Leases and Services of the Public Sector (under Mexican law)*

50. Articles 50 and 60 of the Mexican Law of Acquisitions, Leases and Services of the Public Sector prohibit bribes to public sector officials and misrepresentation made to induce issuance of government contracts.

51. IMSS is entitled to avoidance of the underlying contracts and return of all compensation paid to Teva.

*Fourth Claim for Relief – Breach of Contract (under Mexican law)*

52. Teva breached its contractual duties to IMSS by failing to disclose its corrupt payments.

53. Specifically, Teva contractually represented that it was in compliance with Mexican law; namely, Articles 50 and 60 of the Law of Acquisitions, Leases and Services of the Public Sector.

54. Teva breached the terms of the IMSS contracts by paying bribes to corrupt officials, in violation of these laws. This was a material representation in the contract that IMSS relied on in order to approve the contract.

55. Further, by bribing IMSS officials and misrepresenting that activity in its contracts and invoicing practices, Teva violated Article 8 of the Mexican Civil Code, which expressly prohibits fraud in business contracts.

## JURY TRIAL DEMAND

56. IMSS requests a trial by jury.

## PRAYER FOR RELIEF

57. IMSS prays that this Court award it all the relief to which it is entitled under law or equity.

Respectfully submitted this 21st Day of December, 2020.

*s/Matthew J. Valcourt*
Matthew J. Valcourt
Fla. Bar No. 0088791
Email:  mvalcourt@vlacourtlaw.com
VALCOURT AND ASSOCIATES LLC
850 NE Third St Suite 208
Dania FL 33004
Telephone:  (305) 763-2891
Facsimile:   (305) 470-7484
Attorneys for Plaintiff IMSS

and

By: /s/ Mark Maney
   Mark Maney
   Attorney-in-Charge
   Maney & González-Félix PC
   (*pro hac vice* admission pending)
   Texas Bar No. 12898200
   Federal ID: 11815
   712 Main Street
   Suite 2100
   Houston, Texas 77002
   Telephone: 713.806.2500
   mmaney@maneylaw.com
   ATTORNEYS FOR IMSS